ANNIE MAE HARRELL, EMPLOYEE, PLAINTIFF v. HARRIET AND HENDERSON YARNS, EMPLOYER AND LIBERTY MUTUAL INSURANCE COMPANY, CARRIER, DEFENDANTS

No. 8110IC712

(Filed 6 April 1982)

1. **Master and Servant §§ 55.1, 68— workers' compensation—injury from occupational disease—no award for injury to important organ**

    Where the Industrial Commission found that plaintiff suffered from "obstructive lung disease" but that her disability was independently caused by non-occupational pulmonary fibrosis, the Commission erred in making an award to plaintiff for "permanent injury to [an] important . . . organ" under G.S. 97-31(24), since that statute applies only to injury by accident and not to an injury caused by an occupational disease.

2. **Master and Servant § 68— workers' compensation—insufficient evidence of disability from occupational disease**

    The evidence required the denial of benefits based on disability from an occupational disease under G.S. 97-52 where there was medical evidence that some portion of plaintiff's total lung impairment might be attributable to cotton dust but that plaintiff's lung impairment was caused primarily by non-occupational pulmonary fibrosis; there was insufficient evidence from which the obstructive component of plaintiff's overall condition could be allocated between occupational and non-occupational causes; and there was no evidence that plaintiff would have suffered less than total impairment of earning capacity (i.e. disability) as a result of her non-occupational lung disease alone.

APPEAL by plaintiff and cross-appeal by defendant from the N.C. Industrial Commission. Opinion and award entered 27 May 1980 and affirmed by the Full Commission 23 February 1981. Heard in the Court of Appeals 9 March 1982.

This action arose when plaintiff sought Workers' Compensation benefits for her chronic lung disease which, she alleged, was an occupational disease compensable under G.S. 97-52. Plaintiff's evidence showed that she had worked for many years in cotton mills, having last worked for defendant Harriet and Henderson Yarns in 1967. Her reason for leaving was unrelated to her health. Plaintiff testified to occurrence of "cold symptoms" prior to leaving defendant's employ, but there was no evidence that she suffered disability or severe breathing problems until several years later.

Medical evidence presented at the hearing clearly showed that plaintiff suffers from chronic lung disease which renders her incapable of physical exertion. She is a middle-aged woman with an eighth grade education and no work experience except as a cotton mill laborer. Plaintiff's incapacity to work at her previous occupation is thus established and there is no evidence of her ability to perform any other work.

Medical evidence overwhelmingly attributed plaintiff's lung impairment primarily to non-occupational "restrictive lung disease." There was some evidence, however, that plaintiff also suffered from "obstructive lung disease" which one doctor thought "could have been contributed to by her cotton dust exposure."

Based on this evidence, the Commission found that plaintiff suffered from an occupational disease, but that her disability was independently caused by non-occupational pulmonary fibrosis. The Commission therefore refused to award disability benefits to plaintiff under G.S. 97-52.

Having concluded, however, that plaintiff suffered from one of the occupational diseases set forth in G.S. 97-53, the Commission held that she was entitled to compensation under G.S. 97-31(24) for "partial loss of lung function."

The Commission awarded plaintiff $4,000 for "permanent injury to [an] important . . . organ." G.S. 97-31(24). Plaintiff appeals and defendant cross-appeals.

*Hassell and Hudson, by Robin E. Hudson, for plaintiff appellant.*

*Maupin, Taylor & Ellis, by David V. Brooks and Richard M. Lewis, for defendant appellee/cross appellant.*

ARNOLD, Judge.

## I.

[1] Plaintiff first assigns error to the Commission's failure to award plaintiff benefits under the version of G.S. 97-31(24) in effect at the time she became disabled. We agree that, in occupational disease cases, the date of "injury" is deemed to be the date of disability. *See Frady v. Groves Thread,* 56 N.C. App. 61, 286 S.E. 2d 844 (1982). However, as defendant correctly points out in its cross-appeal, injury caused by an occupational disease does not fall within the scope of G.S. 97-31(24).

Until the passage of G.S. 97-52, some six years after adoption of the Workers' Compensation Act, only injury by "accident" was compensable under any provision of the Act. G.S. 97-52 created an exception to the original statutory scheme, allowing recovery for "[d]isablement or death . . . resulting from an occupational disease. . . ." Nothing is said in this provision or cases construing it which could be interpreted as allowing compensation for injury from occupational disease which falls short of "disablement."

We can only conclude that the Commission, in applying G.S. 97-31(24) to the facts of this case, has misconstrued the adoption of G.S. 97-52 as an implied amendment to G.S. 97-2, the general definitional statute. Only by defining "injury" to include impairment due to occupational disease could the Commission award damages under G.S. 97-31, since occurrence of an injury is required to trigger application of the Act. *Withers v. Black,* 230 N.C. 428, 53 S.E. 2d 668 (1949); *Burton v. American National Insurance Co.,* 10 N.C. App. 499, 179 S.E. 2d 7 (1971). Such a definition is in direct conflict with the clear wording of G.S. 97-2(6) which limits "injury," for purposes of the Act generally, to ". . . injury by accident arising out of and in the course of the employment. . . ." Indeed, the statute specifies that injury ". . . shall not include a disease in any form, except where it results . . . from [an] accident." Since G.S. 97-31 contains no language creating

an exception to this general definition, we hold that it has no applicability to the facts of this case, and that the contrary holding of the Commission must be reversed.

## II.

[2]   Plaintiff's second assignment of error is that the trial court erred in failing to award her disability benefits pursuant to G.S. 97-52. She notes that the Commission found as fact that Plaintiff has an occupational disease and that "[i]t can be reasonably presumed that the claimant has suffered diminution of her future earning power" as a result of the occupational disease. Taken in isolation, we would agree with plaintiff that these findings justify remand of the cause for further findings apportioning her disability between occupational and non-occupational causes. *Hansel v. Sherman Textiles*, 304 N.C. 44, 283 S.E. 2d 101 (1981). However, the Commission also found as fact that:

> 10. . . . [Plaintiff] became disabled (from work) as a result of and following contracting non-occupational pulmonary fibrosis. The significant aspect of claimant's current pulmonary disability is as a result of her restrictive lung disease (pulmonary fibrosis) which arose independently of and following her voluntary retirement. . . .

In attempting to resolve the obvious conflict between these findings the Court has carefully reviewed all of the evidence before the Commission and all of its findings. Some of the Commission's findings, *e.g.* that plaintiff was suffering pulmonary impairment at the time of her voluntary retirement, are not supported by the evidence. Others, like those above, are contradictory. It appears to this Court that the Commission adopted these findings for the same reason that the hearing commissioner apparently made them: to characterize the facts in such a way as to attempt to justify at least some compensation for a particularly sympathetic plaintiff, while correctly denying her claim for disability benefits. Indeed, the Commission's humanitarian motives are suggested in its statement that ". . . we are of the opinion that the correct result was reached by the Hearing Commissioner" in spite of its admission that "[c]lose scrutiny of the record is necessary to find that an occupational disease causing any serious problem exists."

The record reveals only the most carefully qualified medical evidence that some portion of plaintiff's total lung impairment might be attributable to cotton dust. The same doctor dismissed as "speculative" any attempt to assess the relative contribution of obstructive impairment to plaintiff's overall condition and stated that tests "indicate[d] the impairment is restrictive." Moreover, there is insufficient evidence from which the obstructive component, itself a minor or even negligible contributor to plaintiff's condition, could be allocated between occupational and non-occupational causes. Finally, there was no evidence whatsoever that plaintiff would have suffered less than total impairment of earning capacity (*i.e.* disability) as a result of her non-occupational lung disease alone. We hold, therefore, that the evidence overwhelmingly requires denial of benefits based on disability from occupational disease.

While we are not unsympathetic to the Commission's attempt to find an alternative statutory basis for allowing this plaintiff to recover attorneys' fees and a moderate award of benefits, we cannot sanction the misapplication of G.S. 97-31(24). Moreover, to do so would create additional confusing precedent in this area of the law.

Reversed.

Judges CLARK and WEBB concur.