LILA S. GRANT v. BURLINGTON INDUSTRIES, INC. AND LIBERTY MUTUAL INSURANCE CO.

No. 8410IC1352

(Filed 15 October 1985)

1. **Master and Servant § 93.3— chronic obstructive lung disease—family practitioner with experience treating pulmonary diseases—exclusion of testimony erroneous**

   The Industrial Commission erred in an occupational lung disease case by excluding the testimony of the plaintiff's family doctor on the nature and extent of plaintiff's disability where the doctor was an expert in family medicine with experience in the field of pulmonary diseases and had treated plaintiff on a regular basis.

2. **Master and Servant § 94.1— chronic obstructive lung disease—findings not sufficient on disability**

   In an action in which plaintiff sought benefits for total disability for chronic obstructive lung disease, the Industrial Commission's findings on the issue of disability were not sufficiently specific, were internally inconsistent, failed to resolve evidentiary conflicts, and were insufficient to determine the rights of the parties on the issue of disability.

3. **Master and Servant § 68— chronic obstructive lung disease—no disability—compensation awarded—no error**

   The Industrial Commission did not err by awarding compensation under G.S. 97-31(24) (1979) for chronic obstructive lung disease even though it found that plaintiff was not disabled. Total or partial disablement must be shown in all cases in which compensation is sought under G.S. 97-29 or 97-30; however, if compensation is sought in the alternative under G.S. 97-31, disablement is presumed from the injury. G.S. 97-52 (1979).

   Judge WEBB dissenting.

APPEAL by plaintiff from an opinion and award of the North Carolina Industrial Commission entered 14 September 1984. Heard in the Court of Appeals 22 August 1985.

*Gunter and Wansker, by Woodrow W. Gunter, II, for plaintiff appellant.*

*Hedrick, Eatman, Gardner & Kincheloe, by J. A. Gardner, III, and John F. Morris, for defendant appellees.*

---

---

BECTON, Judge.

## I

In January 1982, the plaintiff, Lila S. Grant, filed a claim with the North Carolina Industrial Commission (Commission), seeking benefits for total disability due to occupational lung disease. A Deputy Commissioner concluded that Grant's chronic obstructive lung disease was an occupational disease but that Grant was not disabled as a result. Grant's claim was denied, and Grant appealed to the Commission. In its opinion and award, the Commission adopted the factual findings and conclusions of the Deputy Commissioner. However, the Commission made an additional finding that Grant had sustained permanent damage to each of her lungs and was entitled to $15,000 equitable compensation under N.C. Gen. Stat. Sec. 97-31(24) (1979).

Grant appeals, and the defendants, Burlington Industries, Inc. and Liberty Mutual Insurance Company, cross-appeal. Grant contends: (1) that prejudicial error was committed in certain evidentiary rulings relating to the testimony of Dr. Fred McQueen; (2) that the Commission failed to make sufficiently specific findings on the issue of disability; and (3) that the Commission erred in finding and concluding that Grant is not disabled. In their cross-appeal, defendants contend that because no disability was found, it was error for the Commission to award compensation under G.S. Sec. 97-31(24).

As to Grant's appeal, we hold that (1) Dr. McQueen's testimony was erroneously excluded, and (2) the findings on disability were inadequate. We therefore remand the case so that the excluded testimony may be considered and so that the Commission may make more specific findings on disability. We therefore do not consider whether the Commission properly found that Grant was not disabled. As to the defendants' cross-appeal, we conclude that benefits are available to Grant under G.S. Sec. 97-31(24) for permanent damage to her lungs even if, on remand, the Commission concludes that she is not disabled.

## II

Lila S. Grant was 51 years old at the hearing of this matter. Grant worked for Burlington Industries as a weaver in its Klopman plant for approximately eighteen years between November

1949 and May 1979. During approximately twelve years of that period, Grant was on maternity leave, worked as a homemaker, worked for Stanley Home Products, and worked as an insurance branch manager. Grant testified that her duties as branch manager largely entailed soliciting insurance door-to-door. In May 1979, she was transferred to Burlington's Richmond plant, where she worked as a smash repairer in the weave room until January 1982. The Klopman plant processed cotton material or cotton-polyester blends during Grant's employment there. The Richmond plant manufactured synthetic material only.

Medical evidence was provided by the principal witnesses: Grant herself, Dr. Charles Williams, Dr. Ted Kunstling and Dr. Fred McQueen. According to Grant, she first began to experience breathing problems in the late 1960's. She testified that her breathing problems were originally more severe on weekdays and less severe on the weekends but that by 1975 she was having breathing problems every day of the week. Grant stated that she took the lower-paying job of a smash repairer in 1979 because she was no longer able to perform the more strenuous job of weaver; however, when she last worked in 1982, she was not able to perform the duties of a smash repairer. Grant described the remedies she uses to alleviate her problems, such as elevating her bed upon cement blocks, and listed the prescription drugs she takes. Grant currently experiences breathlessness performing household chores and has difficulty breathing during her sleep.

Pulmonary function tests performed on Grant by Burlington in 1973 revealed "moderate airway obstruction." Between 1973 and 1981, these tests revealed a gradual decline in Grant's lung function. Dr. Charles Williams, who saw Grant on 12 October 1981, testified that pulmonary function studies conducted by him showed a moderate obstructive impairment of ventilation. Grant was also seen on 20 April 1982 by Dr. Kunstling, a pulmonary specialist, on referral from the Industrial Commission. He testified that Grant had chronic obstructive pulmonary disease, that the disease resulted in 25% to 35% respiratory impairment, and that it was permanent. Dr. Kunstling stated that Grant "would probably not be capable of performing jobs requiring hurrying, climbing, or heavy lifting, but should be capable of performing less strenuous jobs such as office work and other types of relative light work."

Also introduced into evidence was the deposition of Dr. Fred McQueen, a specialist in family practice medicine, who treated Grant throughout 1982. He testified that Grant suffered from chronic obstructive pulmonary disease, and also opined, over objection, that Grant was disabled for employment that required more than mild exertion. Dr. McQueen's testimony is discussed more fully below.

## III

[1] Grant's first argument is that reversible error was committed by the Commission in its evidentiary rulings on certain portions of the testimony of Dr. Fred McQueen.

Dr. McQueen's testimony was taken by deposition on 14 December 1982. In its opinion and award, twelve separate objections and motions to strike relating to Dr. McQueen's testimony were sustained or granted by the Deputy Commissioner. In its appeal to the Commission, Grant assigned error to ten of those rulings. The Commission, without explicit reference to these evidentiary rulings, adopted the stipulations, findings, and conclusions of the Deputy Commissioner. Insofar as the Commission did not alter the Deputy Commissioner's rulings, we deem them adopted or affirmed by the Commission. In the ten evidentiary rulings of the Deputy Commissioner excepted to by Grant, and in the failure of the Full Commission to correct them, Grant contends prejudicial error was committed. We agree.

The testimony of Dr. McQueen which was excluded by the Deputy Commissioner falls into two categories: evidence relating to causation of Grant's lung disease and evidence relating to the nature and extent of Grant's disability. The Commission found that Grant's occupational cotton dust exposure was a significant contributing factor to Grant's chronic obstructive lung disease. Grant concedes that causation is not at issue on this appeal. Any error in excluding Dr. McQueen's testimony on causation was plainly harmless.

The same is not true, however, for Dr. McQueen's testimony on the nature and extent of Grant's disability. Dr. McQueen saw Grant for a total of at least ten office visits between 7 January and 22 October 1982. It was Dr. McQueen who placed Grant on a one-month medical leave at her first office visit and advised her

not to return to her work area. He also placed Grant on a six-month leave of absence on her next office visit, had her try various bronchodilators, and had a pulmonary function study performed. Dr. McQueen gave detailed testimony relating to Grant's physical condition throughout the time she was in his care. Nevertheless, a number of objections to his testimony were sustained by the Deputy Commissioner. For example, Dr. McQueen responded to a question that asked what his examination during a 25 February 1982 office visit consisted of and revealed, as follows:

> I felt at that time that [the] patient was better. She was managing her activities of daily living, which is again improved from where she was initially, having shortness of breath at rest and later at mild exertion, and now she was able to take care of things around the house. I felt that with her weight up—she was gaining a couple of pounds and the COPD [chronic obstructive pulmonary disease] was still there —and I advised her at that time that maybe she should apply for her Social Security. We talked and I felt that she did have a chronic disease and that she would be totally disabled.

Perhaps the most critical testimony excluded by the Deputy Commissioner came in response to a question posed by Grant's counsel as to whether, in Dr. McQueen's opinion, Grant suffered from a permanent impairment of her ability to engage in activities requiring physical exertion on a prolonged or sustained basis as a result of her lung disease. Dr. McQueen testified:

> In my opinion, due to [the] patient's objective studies on pulmonary functions and due to follow-up with her and following her from time to time, I find that she does have moderate to severe restrictive and obstructive disease and that she is permanently and totally disabled for any type of gainful employment that would require anything beyond mild exertion.

We next turn to the applicable law. The determinative test for the admission of expert testimony is "whether the opinion expressed is really one based on the special expertise of the expert, that is, whether the witness because of his [or her] expertise is in a better position to have an opinion on the subject than is the trier of fact." *State v. Wilkerson*, 295 N.C. 559, 568-69, 247 S.E. 2d 905, 911 (1978). Dr. McQueen testified that he is a physician

specializing in family practice medicine and that in his practice he sees lots of chronic lung disease. Defendants argue that because Dr. McQueen is a family practitioner rather than a specialist in pulmonary diseases, as are Drs. Williams and Kunstling, he was not qualified to render an opinion as a medical expert on the nature and extent of Grant's disability. A similar argument was rejected in *Robinson v. J. P. Stevens & Co. Inc.*, 57 N.C. App. 619, 292 S.E. 2d 144 (1982). In *Robinson*, the claimant's family physician testified "as an expert witness in general practice with experience in treating people with respiratory complaints." As such, this Court held he was qualified to give his opinion both as to the causation and the extent of the claimant's lung disease. In particular, he was allowed to testify that the claimant was "unable to engage in labor requiring exertion." The Court stated: "A medical witness need not, as a matter of law, be a specialist in a particular subject to give an opinion on it." 57 N.C. App. at 624, 292 S.E. 2d at 147.

A similar result was reached in *Bryant v. Sampson Memorial Hospital*, 72 N.C. App. 203, 323 S.E. 2d 478 (1984). In *Bryant*, this Court held that it was reversible error to exclude the expert testimony of a pathologist on the issue of proper treatment of decubitus ulcers on the ground he was not an expert in general medicine:

> An expert witness is one who through study or experience or both is better qualified than the jury to form an opinion on a particular subject. See Brandis on N.C. Evidence, 2nd Rev. Ed., Sec. 133. We believe that a medical doctor of whatever specialty is better able to form an opinion as to medical treatment than the [lay people] who ordinarily comprise juries.

*Id.* at 204, 323 S.E. 2d at 479.

Applying the foregoing to the instant facts, it is clear that Dr. McQueen's testimony as to the nature and extent of Grant's disability was erroneously excluded. Dr. McQueen, an expert in family medicine with experience in the field of pulmonary diseases, treated Grant on a regular basis throughout 1982. Interestingly, Dr. Kunstling, a board-certified specialist in pulmonary diseases, admitted that he was "handicapped" in evaluating Grant's condition, in that her lung function fluctuated

from day to day, and he had seen her on only a single occasion. Furthermore, the exclusion of the testimony was prejudicial error. That is, in light of the Commission's conclusion that Grant was not disabled, we cannot say that Dr. McQueen's testimony that she was totally and permanently disabled would not have affected the outcome.

## IV

[2] Grant next contends that the Commission did not make findings of fact sufficiently specific for it to determine all questions relevant to the issue of disability. We agree. The Commission is the sole judge of the credibility of witnesses and may accept or reject any of a claimant's evidence. However, the Commission is required to make specific findings as to the facts upon which a compensation claim is based, including the extent of a claimant's disability. *See Cook v. Bladenboro Cotton Mills, Inc.*, 61 N.C. App. 562, 300 S.E. 2d 852 (1983); *Hilliard v. Apex Cabinet Co.*, 305 N.C. 593, 290 S.E. 2d 682 (1982). Although the Commission's findings are conclusive on appeal if supported by competent evidence, its legal conclusions are reviewable by our appellate courts. *Hilliard v. Apex Cabinet Co.* Particularly, when the factual findings are insufficient to determine the rights of the parties, the court may remand to the Commission for additional findings. *Hilliard v. Apex Cabinet Co.*; *Priddy v. Cone Mills Corp.*, 58 N.C. App. 720, 294 S.E. 2d 743 (1982).

The term "disability" is defined in our Workers' Compensation Act as the "incapacity because of injury to earn the wages which the employee was receiving at the time of the injury in the same or any other employment." N.C. Gen. Stat. Sec. 97-2(9) (1979). It is well-settled that in this context, "disability" does not refer to physical infirmity, but to a diminished capacity to earn wages. *Priddy v. Cone Mills Corp.* Our Supreme Court has held that the determination whether a disability exists is a conclusion of law, and, as such, must be based upon findings of fact supported by competent evidence. *Hilliard v. Apex Cabinet Co.* Therefore, to enable a proper review of a conclusion concerning disability, the Commission is required to make specific findings of fact as to a plaintiff's earning capacity. *Hundley v. Fieldcrest Mills*, 58 N.C. App. 184, 292 S.E. 2d 766 (1982). The Supreme Court clarified what findings are necessary to support a conclusion that a worker is disabled in *Hilliard v. Apex Cabinet Co.*:

We are of the opinion that in order to support a conclu-
sion of disability, the Commission must find: (1) that plaintiff
was incapable after his [or her] injury of earning the same
wages . . . earned before [the] injury in the same employ-
ment, (2) that plaintiff was incapable after his [or her] injury
of earning [the] same wages earned before the injury in any
other employment, and (3) that this individual's incapacity to
earn was caused by plaintiff's injury.

305 N.C. at 595, 290 S.E. 2d at 683; *see Priddy v. Cone Mills Corp.*
(order must contain "more than mere recitals of medical opinions"
to resolve issue of disability).

In light of the evidence adduced at the hearing, we are
satisfied that, on the issue of Grant's disability, the factual find-
ings made by the Industrial Commission are inadequate. Grant of-
fered uncontradicted evidence that she worked for Burlington as
a weaver and a smash operator, and she detailed the various
duties and amount of exertion involved in each job—for example,
that as a smash repairer she was required to pull heavy warps.
The Commission found only that, during her employment for Bur-
lington, Grant worked "in the weave room." Other factual find-
ings are internally inconsistent. The Commission found, based
upon competent evidence, that Grant had worked in the insurance
industry as an insurance branch manager, that her work involved
"soliciting business door-to-door," and that Grant is currently
unable to perform duties requiring prolonged exertion. These
findings are in conflict with the additional finding that Grant
would be able to return to work in the insurance industry as it
was an occupation that did *not* involve prolonged exertion.

The record also disclosed plenary and conflicting evidence
concerning Grant's employment as a smash repairer in Burling-
ton's Richmond plant, which plant processed only synthetic
materials. Grant testified that although her duties as smash
repairer were less strenuous than those as a weaver, sufficient
exertion was involved so that, at the time Dr. McQueen advised
her to stop working in January 1982, she was unable to perform
the duties of a smash repairer and that it was necessary for other
workers in the weave room to assist her. She also testified that
there was dust in the weave room at the Richmond plant. Dr.
Kunstling and Dr. Williams both expressed their opinions that ex-

posure to synthetic yarn filaments could neither cause nor aggravate Grant's lung disease. Dr. Kunstling also testified that there are a number of possible explanations other than exposure to cotton dust for Grant's inability to perform the duties of a smash repairer in a factory processing synthetics, such as cigarette smoking of co-workers, room temperature, and the level of physical exertion required.

The Commission found that Grant had work experience in a synthetic textile mill, that she is unable to perform duties requiring prolonged exertion or work in an atmosphere of irritating dust or fumes, and that work in a synthetic textile mill is employment to which Grant is able to return. Based on the evidence summarized above, these findings pertaining to Grant's employment in a synthetic textile plant are clearly deficient. Not only do these findings fail to resolve evidentiary conflicts, *see Priddy v. Cone Mills Corp.* (findings required on conflicting evidence), they are inconsistent. In short, the factual findings in this case are insufficient to determine the rights of the parties on the issue of disability.

V

Concluding as we do that the Commission's findings on the issue of disability are not sufficiently specific, we do not reach Grant's third argument, that the findings of fact do not support the conclusions of law and the award of the Commission.

VI

[3] Defendants Burlington Industries and Liberty Mutual advance a single argument in their cross-appeal, and as it may be relevant on remand, we address it here. Defendants argue that because the Commission determined Grant was not disabled as a result of her chronic obstructive lung disease, it was error for the Commission to award compensation under N.C. Gen. Stat. Sec. 97-31(24) (1979). There is a conflict among cases from this Court as to whether benefits may be awarded under G.S. Sec. 97-31(24) for permanent damage to the lungs when there is no finding of disability resulting from occupational disease. In *Harrell v. Harriett and Henderson Yarns*, 56 N.C. App. 697, 289 S.E. 2d 846 (1982), *disc. rev. allowed*, 309 N.C. 191, 305 S.E. 2d 733 (1983), the Commission found that the plaintiff suffered from an occupational

disease but was not disabled. It then awarded benefits under G.S. Sec. 97-31(24) for partial loss of lung function. The Court of Appeals reversed, holding that "injury caused by occupational disease does not fall within the scope of G.S. Sec. 97-31(24)," *i.e.*, G.S. Sec. 97-31(24) does not apply to occupational disease.

Holdings contrary to that of *Harrell* were subsequently rendered in *Cook v. Bladenboro Cotton Mills, Inc.*, and *West v. Bladenboro Cotton Mills, Inc.*, 62 N.C. App. 267, 302 S.E. 2d 645 (1983). Both *Cook* and *West* held that G.S. Sec. 97-31(24) *does* apply to occupational diseases. In *West*, this Court further stated that disability resulting from occupational disease is a condition precedent to recovery under G.S. Sec. 97-31(24): before compensation can be awarded under N.C. Gen. Stat. Sec. 97-29 (Supp. 1983), Sec. 97-30 (Supp. 1983), or Sec. 97-31 (1979), "disability must exist." We note that *Harrell* is currently pending before our Supreme Court. Until such time as that Court renders its decision, we agree with *Cook* and *West* that occupational diseases are within the scope of G.S. Sec. 97-31(24). However, and especially since the issue is now before our Supreme Court, we disapprove of that portion of *West* that indicates a finding of disability—a diminished capacity to earn wages—is a condition precedent to recovery of benefits under G.S. Sec. 97-31(24).

We analyze the law thusly: N.C. Gen. Stat. Sec. 97-2(6) (Supp. 1983) defines a compensable injury as "injury by accident arising out of and in the course of the employment, and shall not include a disease in any form. . . ." N.C. Gen. Stat. Sec. 97-52 (1979), enacted subsequent to the original definitional statute, makes occupational diseases compensable. It provides: "Disablement or death of an employee resulting from an occupational disease described in G.S. 97-53 shall be treated as the happening of an injury by accident. . . ." G.S. Sec. 97-31 contains a schedule of compensation "for disability during the healing period . . . in lieu of all other compensation," including "the loss of or permanent injury to any important external or internal organ or part of the body for which no compensation is payable under any other subdivision of" G.S. Sec. 97-31. G.S. Sec. 97-31(24). Awards under G.S. Sec. 97-31(24) are equitable in nature and within the Commission's discretion. *Id.* To obtain an award of benefits under any subsection of G.S. Sec. 97-31, a specific showing that the claimant has undergone a diminution in wage-earning capacity is not required.

Instead, disability is presumed from the fact of injury. *See Key v. McLean Trucking*, 61 N.C. App. 143, 300 S.E. 2d 280 (1983) (applying G.S. Sec. 97-31(24): disability compensation under G.S. Sec. 97-31 is awarded for physical impairment irrespective of ability to work or loss of wage earning power); *see also Liles v. Charles Lee Byrd Logging Co.*, 309 N.C. 150, 305 S.E. 2d 523 (1983) (reaching similar result under G.S. Sec. 97-31(22) ). Therefore, as "injury" includes disability resulting from occupational disease, and as disability is presumed from a showing of a scheduled injury under G.S. Sec. 97-31(24), we find no statutory justification for excluding loss of or permanent injury to the lungs resulting from occupational disease from the coverage of G.S. Sec. 97-31(24), and no statutory justification for making a specific finding of disability a condition precedent for recovery thereunder.

Apparently, the position taken in *Harrell* is that the language of G.S. Sec. 97-52 implicitly creates two legal categories of harm caused by occupational disease: (1) occupational disease causing "disablement or death," and (2) occupational disease causing injury that results in no disablement or death. Under *Harrell*, only the former are treated as "injuries by accident" and, therefore, are compensable under G.S. Secs. 97-29, 97-30 and 97-31. The latter category are treated as noncompensable by omission from the Act and from G.S. Sec. 97-52 specifically. Thus, an employee must always prove disability in order to be compensated for an injury caused by an occupational disease under the schedule of injuries in G.S. Sec. 97-31, even though an employee need not prove disability to be compensated for other types of injury by accident under the same statutory schedule. We reject this approach because it appears that the legislature intended to dispense completely with this arbitrary distinction when it enacted G.S. Sec. 97-52. Our holding requires that injury by occupational disease be treated the same as injury by accident, just as mandated by G.S. Sec. 97-52. We hold, then, that in all cases in which compensation is sought under G.S. Secs. 97-29 or 97-30, total or partial disablement must be shown. However, if compensation is sought in the alternative under G.S. Sec. 97-31, disablement is presumed from the injury and compensation is accordingly based on the schedule.

We observe that our holding today does not handicap the textile worker who is disabled as a result of damaged lungs. Such a claimant, who is able to establish impairment of his or her wage-

earning capacity, will undoubtedly seek the greater mandatory benefits recoverable for total or partial disability under G.S. Sec. 97-29 and Sec. 97-30, rather than take a chance at a discretionary award made under G.S. Sec. 97-31(24). Furthermore, a contrary holding in this case would mean that while an employee who punctured a lung on the job and suffered lung damage or a loss of breathing capacity could obtain benefits under G.S. Sec. 97-31(24) without a showing of disability, a worker whose lungs were damaged as a result of employment in a textile mill would be foreclosed from obtaining any benefits whatsoever absent a showing of disability. Such a holding would, in our opinion, be contrary to both the letter and the spirit of our Workers' Compensation Act. *See Cates v. Hunt Construction Co., Inc.*, 267 N.C. 560, 148 S.E. 2d 604 (1966) (Workers' Compensation Act requires both Commission and courts to construe it liberally in favor of the injured worker).

## VII

In conclusion, we vacate the opinion and award of the Full Commission, and remand this case so that the Commission may consider anew the issue of Grant's disability, taking into account the testimony of Dr. McQueen as well as all other competent evidence, and make factual findings on disability sufficiently specific to determine the rights of the parties. If upon remand the Commission concludes that Grant is not disabled as a result of an occupational disease, the award of benefits under G.S. § 97-31(24) is upheld.

Vacated in part and remanded.

Judge WEBB dissents.

Judge MARTIN concurs.

Judge WEBB dissenting.

I dissent to that portion of the opinion which holds that the plaintiff is entitled to compensation under G.S. 97-31(24). I believe the reasoning of *Harrell v. Yarns*, 56 N.C. App. 697, 289 S.E. 2d 846 (1982), *disc. rev. granted, Harrell v. Harriett and Henderson Yarns*, 309 N.C. 191, 305 S.E. 2d 733 (1983), is sound and we are

bound by that case. Until the passage of G.S. 97-52 occupational diseases were not injuries by accident within the meaning of the Workers' Compensation Act. G.S. 97-52 provides in part:

> Disablement or death of an employee resulting from an occupational disease . . . shall be treated as the happening of an injury by accident within the meaning of the North Carolina Workers' Compensation Act.

There was not a finding of a disablement in this case and the plaintiff had not suffered from an accident within the meaning of the Workers' Compensation Act. She was not entitled to compensation under G.S. 97-31(24). *Cook v. Bladenboro Cotton Mills*, 61 N.C. App. 562, 300 S.E. 2d 852 (1983) and *West v. Bladenboro Cotton Mills*, 62 N.C. App. 267, 302 S.E. 2d 645 (1983) did not face this issue squarely as was done in *Harrell*.