***********
The Full Commission reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Stanback and the briefs and oral arguments before the Full Commission. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award, except for minor modifications. Accordingly, the Full Commission affirms the Opinion and Award of Deputy Commissioner Stanback, with modifications.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered by the parties as at the hearing before the Deputy Commissioner and in a Pre-Trial Agreement dated May 8, 2003, as:
 STIPULATIONS
1. All parties are properly before the Industrial Commission, and the Industrial Commission has jurisdiction over the parties and the subject matter.
2. All parties have been correctly designated and there is no question as to misjoinder or nonjoinder of parties.
3. This case is subject to the North Carolina Workers' Compensation Act.
4. An employment relationship existed between plaintiff and defendant-employer Shannon Foust Construction, and Dennis Insurance Group was the insurer on the risk on October 25, 2001, the date of injury.
5. On October 25, 2001, plaintiff suffered a compensable back injury by accident and/or specific traumatic incident when he fell from a roof and severed his spinal cord, causing complete paraplegia, and loss of use of his bowels, bladder, and sexual function.
6. The plaintiff is permanently and totally disabled within the meaning of N.C. Gen. Stat. § 97-31(17) for the total loss of use of his legs.
7. The plaintiff's average weekly wage is an issue for determination by the Commission.
8. Documents stipulated into evidence include Stipulated Exhibit #1, which containing the following: Industrial Commission Forms, Plaintiff's Medical Records, Wage Information, Defendants Responses to Plaintiff's First Set of Interrogatories, Information and Research on "Stimmaster."
 ***********
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was 26 years old. On October 25, 2001, the time of plaintiff's admittedly compensable injury by accident, plaintiff worked for defendant-employer as a laborer, a position he had held for only ten days prior to the date of injury. By reason of the shortness of time during which the employee has been in the employment of his employer it is impractical to compute the average weekly wages by adding his wages during the most recent 52 weeks of employment and dividing by 52 and it is likewise unfair to derive a weekly wage by use of the earnings of the 10 days worked. The fairest method to both parties is to determine the average weekly amount which during the 52 weeks previous to the injury was being earned by a person of the same grade and character employed in the same class of employment in the same locality or community. Under the facts and circumstances of this case this method is fair to both parties.
2. Prior to working for defendant-employer, plaintiff had worked for approximately eight years as a carpenter and general laborer in the construction industry. On October 25, 2001, plaintiff sustained an admittedly compensable injury by accident arising out of and in the course of his employment with defendant-employer when he slipped and fell through a hole in a roof while working on the construction of a residential apartment complex.
3. Defendants have acknowledged that plaintiff's claim is compensable; however, defendants have not filed the necessary forms admitting compensability under the North Carolina Workers' Compensation Act as set forth under N.C. Gen Stat. § 97-18(b).
4. The defendants voluntarily, and without the approval of the North Carolina Industrial Commission, paid weekly benefits based upon an average weekly wage of $400.00, upon which they computed an alleged compensation rate of $266.67 per week. Defendants are not due any credit for such payments since they were due and payable when made. However, defendants will not have to pay these amounts twice.
5. On April 1, 2002, the Executive Secretary's office issued an order compelling defendants to produce by April 26, 2002 documents responsive to Plaintiff's First Set of Interrogatories and Request for the Production of Documents. Defendants did not object or file an answer to Plaintiff's First Set of Interrogatories and Request for the Production of Documents by April 26, 2002, the due date.
6. In September 2002, defendants produced the wage earnings of three "similarly situated employees," which only supplied wage information from June 7, 2001, through the date of injury on October 25, 2001. The defendants' production of this wage information was not responsive to the Plaintiff's First Set of Interrogatories and Requests for the Production of Evidence, which requested wage information of same or similarly situated employees during the 52 weeks prior to the injury.
7. On June 20, 2003, Deputy Commissioner Stanback issued an Order to defendants, again ordering defendant-employer to provide written documentation for all wage information on similarly situated employees for the 52 weeks prior to October 25, 2001, accompanied by an affidavit explaining the calculation of such wage information. The Deputy Commissioner ordered such documentation to be tendered by defendant-employer no later than July 15, 2003. The defendants failed to comply.
8. By reason of the shortness of time during which plaintiff was in the employment of defendant-employer, it is impractical to compute the average weekly wage at the time of plaintiff's compensable injury using plaintiff's own earnings. In lieu of plaintiff's own wages, the Deputy Commissioner gave regard to the average weekly wages of a "similarly situated" employee in the same grade and character employed in the same class of employment as the plaintiff, as supplied by defendant-employer, and stipulated into the record by the parties at pages 35-96 of Stipulated Exhibit #1. In light of defendants' failure to file the necessary forms accepting liability for this claim, and defendants' failure to produce the wage information of similarly situated employees in violation of the respective orders of the Executive Secretary and the Deputy Commissioner, the wage evidence supplied by defendants is viewed by the Full Commission in the light most favorable to plaintiff.
9. In viewing the wage information in the light most favorable to the plaintiff, the Full Commission gives greater weight to the earnings of the highest wage earner supplied by defendants. By subtracting the year-to-date totals of the highest wage earner on June 7, 2001, ($9,361.54), page 96 of Stipulated Exhibit #1, from the year-to-date totals of the highest wage earner on the date of injury, October 25, 2001, ($20,260.00), as reflected on page 35 of Stipulated Exhibit #1, and dividing the result ($10,898.46) by the number of weeks between June 7, 2001, and October 25, 2001, (20 weeks), an average weekly wage of $544.92 is derived, with a corresponding compensation rate of $363.28. Therefore, at the time of plaintiff's compensable injury by accident on October 25, 2001, the average weekly wage of an employee of defendant-employer in the same grade and character, and employed in the same class of employment as plaintiff is found to be $544.92, yielding a compensation rate of $363.28. This average weekly wage shall be used as plaintiff's average weekly wage, together with the corresponding compensation rate.
10. Plaintiff is entitled to a compensation rate of $363.28 per week, which calculates to a difference of $96.61 per week from what he is currently receiving, for each week from the date of injury on October 25, 2001, through the date of this Opinion and Award and continuing for the remainder of plaintiff's natural life. Plaintiff is also entitled to a ten percent (10%) penalty on all unpaid accrued amounts due plaintiff.
11. At the time of plaintiff's compensable injury by accident on October 25, 2001, defendant-employer was aware of the applicable OSHA regulations as defendant-employer admitted using fall protection devices on other job sites. During the ten days plaintiff worked for defendant-employer prior to the injury in question, during which time plaintiff had worked at heights above six feet, defendant-employer had neither provided nor required the use of any fall protection devices or systems, nor had plaintiff observed any other employees of defendant-employer using fall protection devices or systems. Defendant-employer did not consider a personal safety harness to be feasible on the job site where the injury occurred, and did not provide a handrail where plaintiff was working on the roof.
12. At the time of the compensable injury by accident, plaintiff was working around a hole in a roof at a height of at least nine feet above solid concrete. He was not wearing any fall protection devices, and there was not any fall protection system in place at the job site on the date of the accident in question. Additionally, there were no fall protection systems around the hole in the roof around which plaintiff worked.
13. At the time of the injury in question, defendant-employer had not implemented any fall protection system or sought the approval of OSHA to work without such fall protection systems. Defendant-employer neither implemented a fall protection plan, nor sought the approval of a fall protection plan, in violation of 29 C.F.R. § 1926.502(k).
14. OSHA regulations, as codified under 29 CFR, 26.501(b)(1), require "each employee on a walking/working rface (horizontal and vertical surface) with an unprotected de or edge which is 6 feet or more above a lower level all be protected from falling by the use of guardrail stems, safety net systems, or personal fall arrest stems."
15. OSHA regulations, as codified under 29 CFR, 1926.501(b)(4), require "each employee on a walking/working surface shall be protected from falling through holes (including skylights) more than 6 feet above lower levels by personal fall arrest systems, covers, or guardrail systems erected around such holes."
16. Despite defendant-employer's knowledge of the applicable OSHA regulations, and defendant-employer's admitted use of fall protection systems on other job sites, defendant-employer failed to use fall protection systems on the project on which plaintiff was involved, including but not limited to the job site where plaintiff was injured, in willful violation of the applicable OSHA regulations. Plaintiff sustained his burden of proving that he suffered an injury which was caused by the willful failure of the employer to comply with an OSHA safety requirement.
17. As a result of his compensable spinal cord injury, plaintiff suffered the permanent loss of use of his bladder and must catheterize himself multiple times every day.
18. As a result of his compensable spinal cord injury, plaintiff suffered the permanent loss of use of his bowels and must digitally manipulate his bowels daily.
19. As a result of his compensable spinal cord injury, plaintiff suffered the permanent loss of sexual function of his penis. Even with the use of Viagra and/or a pump, plaintiff no longer has the ability to have sexual intercourse.
20. As the natural and probable result of his compensable spinal cord injury and resulting paraplegia, plaintiff suffers from persistent urinary tract infections, bladder infections, chronic pain, depression, and loss of muscle tone and bulk in his lower extremities.
21. As the natural and probable result of his compensable spinal cord injury, resulting paraplegia, and loss of muscle tone and bulk, plaintiff is at an increased risk for pressure sores and skin breakdown, which could lead to infections, including bone infections, sepsis, and ultimately death, if left untreated. The Full Commission thus determines that there is a substantial risk of the necessity of future medical compensation for plaintiff.
22. A neuromuscular stimulator is a device designed to stimulate electrically the muscles in paralyzed extremities, and thereby maintain muscle tone and bulk. The maintenance of plaintiff's muscle tone and bulk in his lower extremities would aid in the prevention of pressure sores and skin breakdown, and thereby prevent infection and other potentially fatal complications.
23. A neuromuscular stimulator would also help plaintiff psychologically by maintaining his muscle tone and bulk in his lower extremities. The only other way for plaintiff to maintain muscle tone and bulk in his lower extremities would be through passive range of motion exercises, which are not currently provided to plaintiff by defendants. A neuromuscular stimulator is reasonably necessary to prevent pressure sores, infection, and potentially fatal complications therefrom, as well as, to give plaintiff relief from psychological problems caused by his self-consciousness about his appearance.
24. The prescription medications including, but not limited to, Neurontin, Amitriptyline, Nortriptyline, Darvocet and Vicodin, are reasonably necessary to effect a cure, or give plaintiff relief from his chronic pain resulting from his compensable spinal cord injury. Various antibiotics are also reasonably necessary to effect a cure of plaintiff's chronic urinary tract infections and bladder infections that result from his compensable spinal cord injury.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. Plaintiff sustained a compensable injury by accident arising out of and in the course and scope of his employment on October 25, 2001, resulting in paraplegia. N.C. Gen. Stat. § 97-2(6).
2. As a result of his compensable injury by accident, plaintiff is permanently and totally disabled within the meaning of the Act for the permanent and total loss of use of his legs. N.C. Gen Stat. § 97-31(17);Timmons v. North Carolina DOT, 123 N.C. App. 456, 473 S.E.2d 356
(1996), aff'd, 346 N.C. 173, 484 S.E.2d 551 (1997).
3. As a result of his compensable injury by accident plaintiff suffered the permanent loss of use of the following important organs: his bladder, bowels, and the sexual function of his penis, for which he is entitled to compensation. No compensation is payable under any other subdivision of N.C. Gen Stat. § 97-31. N.C. Gen Stat. § 97-31(24). Awards under this section are equitable in nature and are within the discretion of the Industrial Commission. Grant v. Burlington Indus., Inc.,77 N.C. App. 241, 335 S.E.2d 327 (1985).
4. At the time of the compensable injury by accident, the average weekly wage of an employee of defendant-employer in the same grade and character and employed in the same class of employment as plaintiff was $544.92, yielding a compensation rate of $363.28. This average weekly wage shall be used as plaintiff's average weekly wage together with the corresponding compensation rate. N.C. Gen Stat. § 97-2(5).
5. Plaintiff is entitled to permanent and total disability compensation at the rate of $363.28 per week for each week from the date of injury on October 25, 2001, and continuing for the remainder of plaintiff's natural life. N.C. Gen Stat. §§ 97-18, 97-29, and 97-31(17).
6. Defendants did not file the proper Industrial Commission forms accepting liability for this claim, and further failed to comply with the Orders of the Industrial Commission, including the Order of Executive Secretary Weaver dated April 1, 2002, and the Order filed by Deputy Commissioner Stanback on June 20, 2003. Furthermore, plaintiff is entitled to a ten percent (10%) penalty on all presently unpaid accrued amounts. N.C. Gen Stat. §§ 97-2(5) and 97-18; and Industrial Commission Rules 601, 605, 802.
7. In addition, plaintiff is entitled to a ten percent (10%) increase in compensation on all past and future indemnity benefits, including any and all payments made under N.C. Gen. Stat. § 97-31(17) and (24), for defendant-employer's willful failure to comply with statutory safety requirements as set forth in section 29 C.F.R. § 1926.501, et seq., of the North Carolina Occupational and Health Standards. N.C. Gen. Stat. §97-12.
8. As a direct result of plaintiff's compensable spinal cord injury, the resulting paraplegia, and his reliance on a wheel chair, plaintiff is at an increased risk of developing pressure sores, urinary tract infections, and bladder infections, as well as severe emotional, psychological, and psychiatric injuries. Plaintiff is entitled to ongoing treatment for all consequences of his compensable injury. N.C. Gen. Stat. §§ 97-25, 97-25.1.
9. Plaintiff is entitled to payment of all medical expenses incurred for treatment of his October 25, 2001 injuries, including, but not limited to, treatment for his spinal cord injury, paraplegia, psychological injuries, chronic pain, urinary tract infections, bladder infections, loss of use of his bladder, bowels, sexual function, and any other treatment provided and recommended by Dr. Toselli and Dr. Oh related to such injuries, which treatments are reasonably necessary to effect a cure, give relief and/or to lessen the period of plaintiff's disability. Plaintiff is also entitled to appropriate and reliable transportation, to and from plaintiff's medical appointments, to be provided by defendants. N.C. Gen. Stat. § 97-25.
10. Plaintiff has not yet reached maximum medical improvement, and treatment has been recommended by Drs. Toselli and Oh that is reasonably necessary to effect a cure, provide relief and/or lessen plaintiff's period of disability. Plaintiff is therefore entitled to payment by defendants of medical expenses incurred and to be incurred by plaintiff as a result of his compensable paraplegia, and resulting chronic pain, loss of bowel, bladder, and sexual function, including but not limited to the prescription pain medications, anti-depressants, antibiotics, prescription of a neuromuscular stimulation device and/or in-home physical therapy, which treatments are reasonable and necessary to treat, prevent, or lessen the risk of, pain, pressure sores, sepsis, bladder and urinary tract infections, and psychological injuries. N.C. Gen. Stat. §97-25.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Subject to the attorney's fees approved herein, defendants shall pay to plaintiff permanent and total disability payments from October 25, 2001, and continuing for the remainder of his natural life at the compensation rate of $363.28 per week. For all weeks in which defendants paid compensation at $266.67, defendants only owe the difference of $96.61 plus late payment penalty and interest on the $96.61, plus 10% safety penalty on the entire $363.28 per week. All payments shall be made on a weekly basis and in a timely manner, or defendants will be subject to sanctions.
2. Subject to the attorney's fees approved herein, defendants shall compensate plaintiff for the loss of the following important organs: his bladder, bowels, and the sexual function of his penis. Within the discretion of the Commission, the defendants shall pay to plaintiff $20,000.00 each for permanent loss of use of his bladder, bowels, and the loss of sexual function in his penis, for a total lump sum payment of $60,000.00.
3. Subject to the attorney's fees approved herein, defendants shall pay to plaintiff a ten percent (10%) penalty on all unpaid accrued indemnity benefits. Said amount shall be paid in one lump sum for the accrued benefits.
4. Subject to the attorney's fees approved herein, and in addition to the penalty ordered in Paragraph 3 of this Award, defendants shall pay to plaintiff a ten percent (10%) increase in compensation on all indemnity benefits for defendants' failure to comply with applicable safety regulations as set forth herein. This includes 10% on all weekly compensation of $363.28 and on the $60,000.00 for damage to important organs.
5. A reasonable attorney's fee in the amount of twenty-five (25%) of the compensation due plaintiff under Paragraphs 1, 2, 3 and 4 of this Award is approved for plaintiff's current counsel (Dan Deuterman of The Deuterman Law Group) and former counsel of record (Crumley and Associates) and shall be paid directly to plaintiff's current counsel (Dan Deuterman of The Deuterman Law Group), to be divided by agreement between counsel. Attorney's fees based on accrued amounts shall be paid in one lump sum, and attorney's fees based on future indemnity compensation shall be deducted from the sums due plaintiff and paid directly to plaintiff's current counsel under the terms as described herein.
6. Defendants shall pay all of plaintiff's medical expenses for the remainder of his natural life to the extent that such treatment is related to treatment of his October 25, 2001 injuries, including, but not limited to, treatment for his spinal cord injury, paraplegia, psychological injuries, urinary tract infections, bladder infections, loss of use of his bladder, bowels, sexual function, including, but not limited to pain medications as prescribed by his treating physicians, including prescription for a neuromuscular stimulation device and/or in-home physical therapy, treatment of bladder and urinary tract infections, and treatment of psychiatric/psychological injuries and any other treatment provided and recommended by Drs. Toselli, and Oh related to these injuries, which treatments are reasonably necessary to effect a cure, give relief and/or lessen the period of the plaintiff's disability. Defendants are further ORDERED to provide appropriate and reliable transportation to and from plaintiff's medical appointments, or be subject to further sanctions.
7. Defendants shall pay the costs due the Commission.
This 25th day of October 2004.
 S/_____________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
 S/_____________ PAMELA T. YOUNG COMMISSIONER