EDGAR STANLEY v. GORE BROTHERS, EMPLOYER; AMERICAN MUTUAL IN-
SURANCE COMPANY, CARRIER, DEFENDANTS

No. 8520IC1296

(Filed 19 August 1986)

1. **Judgments § 37.4; Master and Servant § 94.2— workers' compensation—claim barred by res judicata**

   The doctrine of *res judicata* barred plaintiff's claim for disability based on seizures, headaches and dizzy spells where a similar claim had been previously denied because of plaintiff's failure to prove a causal connection to plaintiff's injury by accident, notwithstanding plaintiff offered subsequent medical testimony that the seizures, headaches and dizzy spells were causally connected to the accident. Furthermore, plaintiff's claim for "irreparable injury to

his brain" was subsumed within his prior claim for compensation based on seizures, headaches and dizzy spells and was also barred by *res judicata.*

**2. Master and Servant § 73— injury to important part of body—amount of compensation—discretion of Commission**

The amount of compensation which the Industrial Commission awards under N.C.G.S. § 97-31(24) is within the discretion of the Commission.

**3. Master and Servant § 73— workers' compensation—award for loss of smell and damage to facial nerves**

Compensation was properly awarded for loss of smell and for damages to the nerves and muscles in the right side of plaintiff's face under provisions of N.C.G.S. § 97-31(24) permitting compensation for loss or damage to an organ or important part of the body. Furthermore, compensation could properly be awarded under this statute without proof of diminished wage-earning capacity.

**4. Master and Servant § 91— workers' compensation—loss of smell and damage to facial nerves—claim not time barred**

Plaintiff's claim for compensation for loss of smell and damage to facial nerves and muscles was not barred by *res judicata* or by the passage of time where these symptoms did not manifest themselves immediately after the accident; plaintiff timely pursued his claim following the first medical evaluation of these symptoms some six years after the accident; and plaintiff did not seek compensation for loss of smell and damage to facial muscles between the time of the accident and the first medical evaluation of those symptoms.

**5. Master and Servant § 73.1— workers' compensation—award for blurred and double vision—damage to important part of body**

The evidence supported findings that plaintiff's loss of visual acuity in his right eye and his blurred and double vision resulting from damage to the nerves and muscles in the orbit of his right eye were two separate injuries, and an award for plaintiff's blurred and double vision was properly made under N.C.G.S. § 97-31(24) as compensation for damage to an important part of the body although plaintiff had previously received compensation for the loss of visual acuity.

FROM an opinion and award of the North Carolina Industrial Commission filed 8 July 1985, the claimant, Edgar Stanley, and the employer, Gore Brothers, appeal. Heard in the Court of Appeals 13 May 1986.

*McCain & Essen, by Grover C. McCain, Jr. and Jeff Erick Essen, for plaintiff appellant.*

*Teague, Campbell, Dennis & Gorham, by George W. Dennis, III, for defendant appellants.*

BECTON, Judge.

From an opinion and award of the North Carolina Industrial Commission (Commission) in this workers' compensation case, both parties appeal. Neither party has shown error, and we affirm.

I

On 10 April 1978, Edgar Stanley suffered a severe head injury when a portion of a tire rim exploded and struck him in his face. Because the injury arose out of and in the course of employment, defendant employer, Gore Brothers, paid Mr. Stanley temporary total disability benefits during the initial healing periods. The extent of Mr. Stanley's disabilities was not immediately known however. Therefore, three separate hearings were held between 29 June 1981 and 2 August 1984 to determine what compensation he was entitled to receive in addition to the temporary total disability benefits already paid.

As a result of the first hearing in 1981, Mr. Stanley was awarded $8,000 for facial disfigurement and additional compensation for a 23.5% loss of vision in the right eye.

On 13 July 1982, a second hearing was conducted, and additional medical reports were stipulated in evidence. Mr. Stanley was awarded compensation benefits for an additional 18% permanent partial disability of the right eye. Dr. Lyndon Anthony had been subpoenaed for the second hearing, but he failed to appear. Therefore, the Deputy Commissioner ordered that the "case be reset . . . for hearing regarding the issues . . . which could not be determined due to Dr. Anthony's failure to appear to testify."

At the 1 December 1982 rescheduled hearing, Mr. Stanley chose not to offer testimony from Dr. Anthony but rather stipulated that the Deputy Commissioner could use Dr. Anthony's medical records as evidence. In a 14 January 1983 Opinion and Award, Deputy Commissioner Scott denied Mr. Stanley's claim on the basis of two findings of fact:

1. Plaintiff returned to Dr. Anthony's office on June 22, 1982 after not having been seen by him since February 1981. Plaintiff complained of having had a convulsion as well as some headaches and dizzy spells. Dr. Anthony treated him for these problems at least to September 1982.

2. No causal relationship was shown between the problems for which plaintiff was being treated by Dr. Anthony beginning in June 1982 and his injury by accident on 10 April, 1978, nor was any disability shown.

Mr. Stanley never appealed the 14 January 1983 ruling. Rather, on 18 January 1984, through his new attorney, Mr. Stanley requested a hearing on "change in condition and for other such workers' compensation benefits that plaintiff may be entitled to under law." At the hearing, Mr. Stanley introduced testimony by deposition of Dr. Barrie Hurwitz, a neurologist at Duke University Medical Center, as well as his own testimony and that of his wife.

Following the requested hearing, the Deputy Commissioner entered another Opinion and Award on 2 August 1984 finding that Mr. Stanley was entitled to compensation of (a) $8,000 for blurred and double vision; (b) $5,000 for loss of sense of smell and taste (an important part of the body); and (c) $2,000 for permanent damage to the nerve and muscles in the right side of the face which caused slurred speech. The Deputy Commissioner, however, denied Mr. Stanley's claim for compensation based on seizures, headaches and dizzy spells, concluding that Mr. Stanley was bound by the 14 January 1983 ruling and the doctrine of *res judicata*.

On 3 July 1985 the Commission affirmed the Deputy Commissioner's decision, and both parties appeal to this Court.

II

Plaintiff's Appeal

[1] Mr. Stanley first assigns error to the Commission's findings and conclusions that he is not entitled to any award for convulsions, headaches and seizures. Mr. Stanley concedes that these medical problems were the subject of an earlier Opinion and Award in 1983, but in an effort to avoid the bar of the doctrine of *res judicata*, Mr. Stanley argues that the "convulsions, headaches and seizures" for which he is now seeking compensation are not the same "convulsions, headaches and seizures" for which he previously sought compensation. We disagree.

Although Mr. Stanley's history of headaches, dizziness and seizures dated back to his 10 April 1978 injury by accident, the

record contains no evidence of two different kinds of headaches or dizziness, or of earlier or later seizures. Indeed, all of Mr. Stanley's seizures, grand mal and partial, occurred before 1983 or in 1983, the year in which Deputy Commissioner Scott first denied his claim. Moreover, neither Mr. Stanley's complaints of symptoms nor his treatment and medication based on his complaints changed between 1978 and the date Deputy Commissioner Scott first denied his claim.

In her 14 January 1983 opinion and award, Deputy Commissioner Scott concluded:

In that plaintiff did not prove a causal relationship between the convulsions, headaches, and dizzy spells for which he was treated by Dr. Anthony and his injury by accident on April 10, 1978, he is not entitled to recover for the medical expenses incurred or any disability he might have sustained as a result thereof.

Significantly, Mr. Stanley squandered at least two opportunities before Deputy Commissioner Scott's 14 January 1983 ruling to show the requisite causal connection. First, he chose to submit Dr. Anthony's "two pages of office notes" in lieu of calling Dr. Anthony as a witness. Second, instead of requesting another hearing to prove a causal connection, Mr. Stanley requested that his case be removed from the inactive docket and that a decision be rendered even though all parties had been specifically informed that Dr. Anthony's "reports did not give any information upon which an Opinion and Award could be based." Equally important, Mr. Stanley failed to appeal the 14 January 1983 ruling.

It is true that in January 1984, Dr. Hurwitz stated that Mr. Stanley's seizures, headaches and dizzy spells were caused by the accident and subsequent surgery which produced a loss of brain tissue in Mr. Stanley's right frontal lobe. This evidence, however, came a year too late, as Deputy Commissioner Scott's finding of fact in her 2 August 1984 opinion and award indicates: "Although plaintiff has now produced evidence of a causal relationship between his seizures, headaches, and dizzy spells in [sic] this accident by reason of brain damage he has sustained, a finding as to this issue has previously been made." In short, Mr. Stanley's claim of disability based on seizures, headaches, and dizzy spells was denied for lack of proof. Our law does not allow him to

relitigate that claim *ad infinitum*. The doctrine of *res judicata* was correctly applied by Deputy Commissioner Scott and the Commission.

## III

Based on our analysis in Part II, *supra*, we summarily reject Mr. Stanley's argument that the Commission erred in its finding of fact regarding the anti-seizure medication used by him. If Mr. Stanley is not entitled to recover compensation for his seizures, then, *a fortiori*, the Commission properly refused to order the employer, Gore Brothers, to provide anti-seizure medication to Mr. Stanley.

## IV

Based on our analysis in Part II, *supra*, we also reject Mr. Stanley's argument that the Commission erred "in affirming the hearing commissioner's failure to make findings, conclusions, or any award for loss of the right frontal lobe of plaintiff's brain, an important internal organ of the body." Mr. Stanley's claim of "irreparable injury to his brain" was subsumed within his claim for compensation based on seizures, headaches, and dizzy spells. No provision of the Workers' Compensation Act allows Mr. Stanley to recover compensation for these specific medical problems or symptoms. In order to recover compensation for these symptoms, Mr. Stanley had to show that he sustained damage to his brain, an important internal organ of the body.

As a result of the explosion and the later surgical removal of the damaged area, we know that Mr. Stanley lost the right frontal lobe of his brain. According to Dr. Hurwitz, this porencephaly is confirmed by CT scans and x-rays which show that tissue has been removed from that area of Mr. Stanley's brain.

However, as Deputy Commissioner Scott noted in her 14 January 1983 Opinion and Award, Mr. Stanley failed timely to prove his claim. Two separate hearings were scheduled in 1982 during which Mr. Stanley could have offered evidence from Dr. Anthony who operated on and treated Mr. Stanley as a result of the 10 April 1978 injury. And the evidence was obviously available to Mr. Stanley, since Dr. Hurwitz himself relied in part on office and operative notes of, as well as lab reports by, Dr. Anthony. Mr. Stanley also had a right to appeal from Deputy Commissioner

Scott's decision, but he did not do so. We conclude that the doctrine of *res judicata* was correctly applied to this issue by Deputy Commissioner Scott and the Commission.

V

[2] In assignments of error three, four and five, Mr. Stanley argues that the Commission erred in limiting his award to $5,000 for loss of sense of smell, $8,000 for blurred and double vision, and $2,000 for damage to the nerves and muscles in the right side of his face. Because of our conclusion in Part VI, *infra*, we treat this issue summarily. The amount of compensation which the Commission awards under N.C. Gen. Stat. Sec. 97-31(24) (1985), is within the discretion of the Commission. *Little v. Penn Ventilator Company*, 75 N.C. App. 92, 330 S.E. 2d 276 (1985). Mr. Stanley has failed to show an abuse of discretion, and we therefore reject his argument that the Commission erroneously limited his awards.

VI

Defendants' Cross Appeal

Gore Brothers excepted to and assigned as error the Commission's award of additional compensation benefits for blurred and double vision, loss of sense of smell, and permanent damage to the nerves and muscles in the right side of Mr. Stanley's face. In support of their assignments of error, Gore Brothers claims that (1) no provision of the Workers' Compensation Act provides for these losses; (2) plaintiff has not proven loss of earnings or earning capacity; and in any event, such claims are barred by (3) the doctrine of *res judicata* and (4) the failure of plaintiff to timely pursue these claims.

A. Loss of the Sense of Smell and Permanent Damage to the Nerves and Muscles in the Right Side of Mr. Stanley's Face.

[3] It is true that no provision of the Workers' Compensation Act specifies the payment of benefits due to the loss of a sense of smell or damages to the nerves and muscles of an employee's face. However, benefits are awarded under G.S. 97-31(24) for loss of or permanent injury to important external or internal organs or parts of the body, and we hold that the Commission properly used G.S. 97-31(24) in awarding benefits in this case. In so doing, we reject defendants' argument that proof of diminished wage-earning capacity is required under G.S. 97-31(24).

In support of its claim that Mr. Stanley must prove diminished wage-earning capacity, Gore Brothers argues that an analogy must be made between cases involving disfigurement under G.S. 97-31(21) and (22) and cases involving loss or damage to an organ or important part of the body under G.S. 97-31(24). The analogy rests on the fact that subsections 21, 22 and 24 of G.S. 97-31 contain no specified period of presumed disability. This absence of "a stated number of weeks" of disability, Gore Brothers claims, renders the three subsections virtually identical and, therefore, subject to an identical interpretation. Our response is threefold. First, in *Grant v. Burlington Industries, Inc.*, 77 N.C. App. 241, 335 S.E. 2d 327 (1985), this Court found that partial loss of a lung, as loss of an important organ, was compensable under G.S. 97-31(24) and that proof of diminished wage-earning capacity was not required. Specifically, we held:

> As disability is presumed from a showing of a scheduled injury under G.S. Sec. 97-31(24), we find no statutory justification for excluding loss of or permanent injury to the lungs resulting from occupational disease from the coverage of G.S. Sec. 97-31(24), and no statutory justification for making a specific finding of disability a condition precedent for recovery thereunder.

Second, although compensation for loss or damage to an organ or important part of the body was at one time subsumed under the bodily disfigurement subsections of G.S. 97-31, the Workers' Compensation Act now provides benefits for loss of organ as an injury separate and distinct from disfigurement, compensable in its own right and subject to its own standards, under subsection 24. Third, disfigurement under subsections 21 and 22 are compensable only when the seriousness of the disfigurement may be reasonably presumed to in some way affect wage-earning capacity; however, the seriousness of the injury does not have to be proven under subsection 24. Certain injuries, such as loss or damage to an organ or part of the body, have always been construed to be serious injuries affecting a person's ability to live and work, and as such, have been compensable regardless of wage-earning capacity. *See Crawley v. Southern Devices, Inc.*, 31 N.C. App. 284, 229 S.E. 2d 325 (1976), *disc. rev. denied*, 292 N.C. 467, 234 S.E. 2d 2 (1977).

[4]  We also reject Gore Brothers' additional argument that plaintiff's "claim for compensation due to an alleged loss of the sense of smell and damage to the nerves and muscles in the right side of his face is also barred by the passage of time and the doctrine of *res judicata*." These symptoms did not manifest themselves immediately after the accident. Further, the first opinion and award filed in this matter on 20 March 1981 covered only Mr. Stanley's loss of vision and the disfigurement of his face. It was not until 18 January 1984—almost three years later—that the loss of smell, and the damage to facial nerves and muscles were medically evaluated and shown to relate to the April 1978 accident. It was then that Dr. Hurwitz noted the causal connection between Mr. Stanley's head injury and the symptoms he was *then* experiencing. That Mr. Stanley had an opportunity to consult Dr. Hurwitz before January 1984 is not dispositive. At no time between April 1978 and January 1984 did he seek compensation for loss of smell and damage to facial muscles. Following the first medical evaluation of these symptoms, however, he timely pursued his claim.

B. Blurred and Double Vision

[5]  The Commission also awarded Mr. Stanley $8,000 for permanent damage to the nerves and muscles in the orbit of his right eye, causing double and blurred vision. After considering the medical testimony of Dr. Hurwitz, Deputy Commissioner Scott, in her 2 August 1984 opinion and award, found the following in regard to Mr. Stanley's blurred and double vision:

> 3. Plaintiff developed double vision and blurred vision following the accident. These were the result of a condition separate and apart from the loss of visual acuity in his right eye.
>
>      . . .
>
> 6. Dr. Hurwitz also found that plaintiff had sustained damage to the nerves and muscles in the orbit of his right eye which had resulted in limitation of motion of the eye. The right eye was unable to move in unison with the left and could not move as far in any direction as the left eye. This resulted in misalignment of his gaze and the double vision and blurred vision he had complained of.

Based on these findings, Deputy Commissioner Scott concluded:

> As a result of the injury by accident giving rise to this claim, plaintiff has sustained permanent damage to the nerves and muscles in the orbit of his right eye, which is an important part of the body, for which he is entitled to compensation in the amount of $8,000. G.S. 97-31(24).

With regard to this award, Gore Brothers first contends that "that portion of Finding of Fact 3 which concludes that plaintiff's double and blurred vision was 'the result of a condition separate and apart from the loss of visual acuity in his right eye' (for which plaintiff has already been paid permanent disability benefits), is without evidentiary support of record" because among the problems Dr. Butler considered in arriving at his 41.5% permanent partial disability rating was the double or blurred vision upon which the Commission's $8,000 award is based. Our review of the record reveals that at the time the Deputy Commissioner considered Dr. Butler's findings, the Deputy Commissioner did not address the problem of blurred and double vision, of impaired movement of the eye resulting from damaged nerves and muscles, or the inability of Mr. Stanley's eyes to move in unison. Indeed, Dr. Hurwitz testified that the blurred and double vision did not result from damage to the eye, but rather resulted from damage to the bones, muscles and nerves of Mr. Stanley's face:

> Q. Then it's not an internal eye problem nor, in your opinion, is it due to whatever brain damage he had from this accident?
>
> A. No, in my opinion, this is due to the injury that he sustained to the face and the orbit, the bone around the eye. You see, the eye sits in the front of a bony triangle. This is your bony triangle. You've got your eye in front. Running through the back of this bony triangle are holes and slits through which nerves go and connect the muscles which go to the eye. You get damage to that part of the face, and this bone fractures and breaks and moves in, it can either cut, tear or damage the nerves or damage the muscles.
>
> So, I think that's where the injury occurred. I don't think it's due to brain injury, and *I don't think it's due to internal injury to the eye.*

As further evidence that the visual acuity in Mr. Stanley's eye and his double and blurred vision were two separate injuries, Dr. Hurwitz suggested that the problem of blurred and double vision could be alleviated by the covering of one eye as this would eliminate the second or "double" image. As Mr. Stanley suggests in his brief, "Obviously, visual acuity in an eye will not be altered in any way by the covering of one or the other of the eyes." Consequently, we conclude that the award for Mr. Stanley's blurred and double vision was properly made under G.S. 97-31(24) as a result of damage to an important part of the body—the bones, nerves and muscles in the orbit of Mr. Stanley's right eye.

## VII

Based on the foregoing, the opinion and award of the Commission from which the parties appeal is affirmed. The cost of preparing the record on appeal is to be borne equally by both parties; all other costs are to be borne by the party incurring them.

Affirmed.

Judges ARNOLD and WELLS concur.