***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Holmes and the briefs and arguments of the parties. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award, except for minor modifications.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as:
 STIPULATIONS
1. This case is subject to the North Carolina Workers' Compensation Act.
2. The employment relationship existed between the employee and employer on October 29, 1999 and at all relevant times.
3. The employee's average weekly wage is $450.00.
4. Plaintiff suffered a compensable accident when he was trapped in a doorway by a scissors lift on October 29, 1999.
5. It is stipulated that all parties have been correctly designated, and there is no question as to mis-joinder or non-joinder of parties.
6. It is stipulated that all parties are properly before the Industrial Commission, and that the Industrial Commission has jurisdiction of the parties and of the subject matter.
7. At the hearing of this matter before the deputy commissioner plaintiff raised the issue of his discharge from employment with Chisholm Services, Inc. for the first time, and was permitted to offer evidence of the circumstances surrounding his termination of employment.
8. Deputy Commissioner Holmes ordered that defendants be permitted to present evidence on this issue through deposition testimony, which was done through the deposition testimony of Hank Carpenter, plaintiff's supervisor at Chisholm Services, Inc.
 ***********
Based upon all the competent evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the deputy commissioner plaintiff was thirty-two years old. He had completed the eighth grade and was working on obtaining his GED from Alamance Community College.
2. On October 29, 1999 plaintiff sustained a compensable injury by accident when operating a scissors lift for his employer he attempted to enter a doorway of new construction. As plaintiff looked around his scissors lift to steer his equipment through the doorway, his head became wedged between the doorway and the scissors lift. As a result of this incident plaintiff experienced several injuries to his head area including a fractured jaw and a skull fracture.
3. Plaintiff alleges that Hank Carpenter, his supervisor, was aware of a pending OSHA investigation as a result of this accident. However, the evidence fails to establish that plaintiff's injury was caused by the willful failure of defendant-employer to comply with any statutory requirement.
4. Plaintiff managed to recover from his injuries to the point he was able to return to work by December 5, 1999.
5. Plaintiff suffered a compensable injury to his left shoulder when he suffered a seizure while working out at his gym in March 2000. This injury has been treated as compensable based on a diagnosis that the seizure was related to plaintiff's injuries from the 1999 accident.
6. Plaintiff treated for his shoulder injury with Dr. Peter Dalldorf until November 15, 2000 when plaintiff was released to return to work full duty. Dr. Dalldorf assigned a 10% permanent partial disability rating.
7. Plaintiff again returned to his regular employment with defendant-employer and worked in his regular position for approximately a year and a half until February 2002, when he again injured his left shoulder.
8. Plaintiff returned to Dr. Dalldorf for treatment, eventually undergoing a left shoulder arthroscopy in October 2002. Dr. Dalldorf added an additional 10% to his original permanent partial disability rating for a total PPD of 20%. Plaintiff again returned to full duty work without restrictions on February 12, 2003.
9. Plaintiff was discharged from his employment with Chisholm Services, Inc. in October 2003.
10. Plaintiff had volunteered to be scheduled to work on a Saturday. However, on the Saturday he had been scheduled, plaintiff failed to call in and report that he would not be able to work. The Chisholm Services, Inc. handbook requires employees to call in and report their absences and notes that failure to do so may result in termination.
11. Rather than make Saturdays a mandatory work day, Hank Carpenter had instituted a program to give employees a chance to volunteer for overtime work on Saturdays. However, once an employee volunteered to work on a Saturday it became a mandatory workday. In fact, on the Monday prior to the Saturday that plaintiff failed to call in, Mr. Carpenter had stressed at a meeting the importance of showing up for work or at least calling in to report an absence, reminding employees of the company policies.
12. Prior to plaintiff's discharge, Mr. Carpenter had made attempts to work with plaintiff when he missed work, but plaintiff began to fail to report his absences.
13. Mr. Carpenter testified that other employees have been discharged for failing to report their absences from work.
14. Dr. Dalldorf testified that there was no medical reason plaintiff could not have called in to report his absence. Based upon the medical testimony of Dr. Dalldorf, the Full Commission finds that there was no medical reason plaintiff could not have called in to report his absence from work.
15. Plaintiff was discharged for his fault or misconduct in failing to report his absence from work. Although, plaintiff allegedly missed work because of shoulder pain, the medical evidence demonstrates that his failure to call his supervisor was not caused by any disability. Furthermore, plaintiff was originally injured in 1999 and subsequently suffered two shoulder injuries, each time returning to his regular job with Chisholm Services, Inc. Plaintiff was discharged for misconduct unrelated to his disability.
16. Plaintiff has not proven that any resulting inability to earn wages is the result of a disability. There is no credible evidence why plaintiff has not obtained other employment. He is enrolled in a community college working towards his GED.
17. Plaintiff is still at risk, due to his original compensable injury by accident of October 29, 1999, for further seizures and will need further medication and evaluations and possible treatment.
 ***********
The foregoing findings engender the following additional:
 CONCLUSIONS OF LAW
1. Plaintiff experienced an injury by accident on October 29, 1999. As a result of this compensable accident plaintiff experienced two shoulder injuries, a fractured jaw and injuries to the brain, which manifested by seizures and cognitive deficits. N.C. Gen. Stat. § 97-2(6).
2. As a result of plaintiff's compensable injury of October 29, 1999 and his two subsequent shoulder injuries he has sustained a 20% permanent partial disability to one of his upper extremities. N.C. Gen. Stat. § 97-31.
3. As a result of plaintiff's compensable injury he has sustained a serious disfigurement as a result of his fractured jaw. N.C. Gen. Stat. § 97-31(21).
4. As a direct and proximate result of plaintiff's October 29, 1999 compensable injury by accident, plaintiff has suffered permanent injury to his brain manifested by seizures and cognitive deficits, which is an important internal organ or part of the body for which no compensation is payable under any subdivision of N.C. Gen. Stat. § 97-31 other than N.C. Gen. Stat. §97-31(24). Stanley v. Gore Brothers, 82 N.C. App. 511
(1986).
5. The medical treatment plaintiff received was necessary to effect a cure, give relief and did tend to lessen plaintiff's period of disability. Plaintiff will need further medical treatment in the future. N.C. Gen. Stat. §§ 97-2(19), 97-25.1 97-25.
6. In determining whether plaintiff's termination from employment on October 13, 2003, would preclude him from receiving workers' compensation benefits, initially defendants must prove, (1) plaintiff was terminated for his conduct, (2) the same misconduct would have resulted in the termination of a non-disabled employee, and (3) the termination was unrelated to plaintiff's compensable injury. An employer's successful demonstration of such evidence is "deemed to constitute a constructive refusal" by the employee to perform suitable work, a circumstance that would bar benefits for lost earnings. Plaintiff was terminated from his employment based upon his own misconduct in having not called in to report that he would be absent on a scheduled workday. This failure to call in to report his absence was not related to his disability and would be grounds for the discharge of any non-disabled employee. Therefore, plaintiff is deemed to have constructively refused suitable employment and is therefore barred from seeking benefits for lost earnings. Seagraves v. The Austin Company ofGreensboro, 123 N.C. App. 228, 472 S.E.2d 397 (1996).McRae v. Toastmaster, Inc., 358 N.C. App. 488,597 S.E.2d 695 (2004).
7. Plaintiff has failed to proved that his injury was caused by the willful failure of the employer to comply with any statutory requirement or any lawful order of the Commission and is not entitled to a 10% increase in the compensation awarded. N.C. Gen. Stat. § 97-12(3).
 ***********
Based upon the foregoing, the Full Commission makes the following:
 AWARD
1. Defendants, subject to an attorney fee provided in paragraph 5 shall pay to plaintiff in a lump sum the amount of $300.01 for 48 weeks on account of his 20% PPD to his left arm.
2. Defendants, subject to an attorney fee provided below shall pay to plaintiff $5,000.00 for the injury to his jaw. This compensation has accrued and shall be paid in a lump sum, subject to a reasonable attorney's fee approved in Paragraph 5.
3. For plaintiff's permanent injury to the brain, an important internal organ or part of the body, defendant-employer shall pay plaintiff the sum of $15,000.00. This compensation has accrued and shall be paid in a lump sum, subject to a reasonable attorney's fee approved in Paragraph 5.
4. Plaintiff's motion for a 10% increase to his compensation pursuant to N.C. Gen. Stat. § 97-12(3) is DENIED.
5. Defendants shall deduct 25% of the compensation awarded to plaintiff in paragraphs 1, 2 and 3 of this award and send it directly to plaintiff's counsel as an approved attorney fee. Said amount shall also be paid in a lump sum.
6. Defendants shall pay for any further medical treatment required as a result of plaintiff's compensable injuries, including but not limited to, medications and treatment for seizures and their prevention and other treatment for so long as said treatment effects a cure, gives relief or tends to lessen plaintiff's period of disability.
7. Defendants shall pay the costs which include an expert witness fee of $600.00 to Dr. James Lee, $400.00 to Dr. Peter Dalldorf, and $400.00 to Dr. Ernest Botero, if not already paid by prior order.
This the 31st day of August 2005.
 S/_______________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
 S/____________________ BERNADINE S. BALLLANCE COMMISSIONER
 S/____________ BUCK LATTIMORE CHAIRMAN