LATTIE C. KING v. YEARGIN CONSTRUCTION CO., INC., Employer, and LIBERTY MUTUAL INSURANCE CO., Carrier, Defendants

No. COA95-412

(Filed 5 November 1996)

**Workers' Compensation § 254 (NCI4th)— temporary total disability—Form 21 agreement—employer's burden of showing disability ended**

Where the parties' Form 21 agreement for the payment of temporary total disability was approved by the Industrial Commission, the employee enjoys a presumption of disability, and in order to terminate the employee's benefits absent a waiver, the employer must request a hearing at which it bears the burden of showing that the employee is no longer disabled. Therefore, the Industrial Commission erred by placing on plaintiff employee the burden of proving continued disability even though plaintiff had been released to return to work with no restrictions.

**Am Jur 2d, Workers' Compensation § 431.**

**Insurance: "total disability" or the like as referring to inability to work in usual occupation or in other occupations. 21 ALR3d 1155.**

Appeal by plaintiff from Opinion and Award entered 16 February 1995 by the North Carolina Industrial Commission. Heard in the Court of Appeals 25 January 1996.

*Grimes and Teich, Attorneys, by Henry E. Teich, for plaintiff-appellee.*

*Roberts & Stevens, P.A., by Steven W. Sizemore, for defendant-appellees.*

JOHN, Judge.

Plaintiff appeals an Opinion and Award of the North Carolina Industrial Commission (the Commission) ruling he was not entitled to Workers' Compensation benefits under N.C.G.S. § 97-29 (1991) or N.C.G.S. § 97-30 (1991), and confining his award to benefits under N.C.G.S. § 97-31 (1991). We reverse the Commission's order and remand for further proceedings.

Pertinent facts and procedural information are as follows: plaintiff sustained an injury 11 July 1989 in the course of his employment

as a sheet metal mechanic with defendant Yeargin Construction Co., Inc. (Yeargin). Pursuant to a Form 21 agreement, approved by the Commission 18 August 1989, plaintiff was paid temporary total disability benefits from 23 July 1989 until 28 August 1989, when he returned to work with labor restrictions. By July 1990, his condition had worsened, and he ceased working for Yeargin save for a 10-day period in September 1990. Plaintiff again began receiving temporary total benefits on 12 July 1990, this time pursuant to a Form 26 agreement, denominated "Supplemental Memorandum of Agreement as to Payment of Compensation," approved by the Commission 15 August 1990.

Although plaintiff manifested continuing symptoms, his orthopaedic surgeon, Dr. Montgomery, released him to return to work without restrictions 29 January 1991. Plaintiff did not seek work and was not offered suitable work by Yeargin. His temporary total benefits were terminated by defendants 28 January 1991, which termination was approved by the Commission 27 February 1991.

In September 1991, plaintiff was referred to Dr. Sean Maloney (Dr. Maloney), a specialist in physical medicine and rehabilitation. Plaintiff eventually reached maximum medical improvement 7 February 1992, and was rated by Dr. Maloney as having a 10% permanent partial impairment of the back.

In response to the January 1991 termination of benefits, plaintiff requested a hearing to determine his right to further compensation. In an Opinion and Award filed 30 June 1992, Deputy Commissioner Morgan Chapman ordered defendants to pay plaintiff temporary total disability benefits for the period from 28 January 1991 through 7 February 1992. The Deputy Commissioner determined plaintiff appeared to retain some earning capacity subsequent to attaining maximum medical improvement. However, plaintiff had not reached the end of his healing period prior to the hearing, and no evidence regarding plaintiff's earning capacity was presented. The Deputy Commissioner concluded an additional hearing was required to determine plaintiff's earning capacity should he elect the receipt of benefits under G.S. § 97-30, dependent upon loss of earning capacity, rather than under G.S. § 97-31, payable regardless of earning capacity.

Following a 23 August 1993 hearing conducted for the foregoing purpose, Deputy Commissioner Lorrie L. Dollar ruled plaintiff was limited to benefits under G.S. § 97-31. On appeal, her decision was

affirmed by the Full Commission in an Opinion and Award filed 16 February 1995. The Commission's order provided, *inter alia*, as follows:

> 8. The plaintiff began working at the World of Wood on June 13, 1993, working 13-20 hours per week for $4.25 per hour. The plaintiff's duties include estimates, customer service and spray-finishing handcrafted furniture with a spray gun.

> 9. Based upon credible evidence, the undersigned find that from February 7, 1992, the last date Dr. Maloney saw the plaintiff, when the plaintiff reached maximum medical improvement, the plaintiff failed to make a reasonable effort to find other employment. The plaintiff was unable to identify employers to whom he had applied for work, if any, during 1992. The job search list submitted by the plaintiff for the first three months of 1993 contained false or misleading information on at least two of the entries, and plaintiff was vague about the nature of the contacts with the other entries on the list. The plaintiff did not offer evidence of any job search activities between March 30, 1993 and June 12, 1993, and the plaintiff did not attempt to utilize newspaper advertisements, the Employment Security Commission, or any other employment source which maintains information regarding job vacancies. Thus, the plaintiff's testimony and evidence regarding his job search are not accepted as being credible evidence of the extent of his wage earning capacity.

> 10. The *plaintiff has failed to establish by a preponderance of the credible evidence* that he has been disabled from earning wages from February 7, 1992 through June 12, 1993, pursuant to N.C.G.S. §§ 97-29 and 97-30. The plaintiff did not make a reasonable effort to seek employment and has not demonstrated any disability other than the 10 percent permanent partial disability to his back, as was previously assigned by Dr. Maloney by letter dated January 7, 1992.

(emphasis added). Plaintiff appeals.

In the arguments advanced in their appellate briefs, both parties proceed on the assumption that at the 23 August 1993 hearing, plaintiff bore the burden of proving he retained a disability as defined by N.C.G.S. § 97-2(9). In a general sense, it is true an injured employee has the burden of showing he is incapable of earning the same wages he previously earned, either in the same or in any other employment. *Russell v. Lowes Product Distribution*, 108 N.C. App. 762, 765, 425

S.E.2d 454, 457 (1993). However, a recent opinion of this Court has clarified that, upon execution of a Form 21 agreement and subsequent approval by the Commission, the employee enjoys a presumption of disability. *See Kisiah v. W.R. Kisiah Plumbing, Inc.*, 124 N.C. App. 72, 476 S.E.2d 434 (1996). Absent waiver, in order to terminate an employee's benefits thereafter, the employer must request a hearing at which it bears the burden of showing the employee is no longer disabled. *Id.* Moreover,

> The employee need not present evidence at the hearing unless and until the employer 'claim[ing] that the plaintiff is capable of earning wages . . . come[s] forward with evidence to show not only that suitable jobs are available, but also that the plaintiff is *capable* of getting one, taking into account both physical and vocational limitations.

*Kisiah*, (citing *Kennedy v. Duke Univ. Med. Center*, 101 N.C. App. 24, 33, 398 S.E.2d 677, 682 (1990) (emphasis supplied in *Kisiah*)); *see also Franklin v. Broyhill Furniture Industries*, 123 N.C. App. 200, 472 S.E.2d 382 (1996).

In the case *sub judice*, although a Form 21 agreement had been executed and approved by the Commission 18 August 1989, defendants twice terminated payment of benefits to plaintiff absent a hearing—first, when plaintiff returned to work in August 1989, and also in January 1991, when Dr. Montgomery "released him to work." The Commission ratified the latter action simply by stamping as "approved" defendants' Form 24 application to stop payment of compensation. When a hearing was finally held at the request of *plaintiff*, a Deputy Commissioner determined that plaintiff's benefits had been wrongfully terminated in January 1991. Plaintiff was deprived of benefits for approximately one and one-half years between cessation of payments in January 1991 and the Deputy Commissioner's decision in June 1992. This sequence of events aptly demonstrates the importance of the holding in *Kisiah* that compensation awarded by virtue of a Form 21 agreement approved by the Commission may not be terminated "absent [waiver or] the opportunity for a hearing." *Kisiah*, 124 N.C. App. at 81, 476 S.E.2d at 439.

On appeal, the Commission's findings of fact are binding if support by evidence in the record; however, its legal conclusions are subject to review. *Grant v. Burlington Industries, Inc.*, 77 N.C. App. 241, 335 S.E.2d 327 (1985). At the 23 August 1993 hearing subsequent to plaintiffs' attaining maximum medical improvement in February

1992, which hearing is the subject of the instant appeal, the Commission erred under *Kisiah* by determining *plaintiff* failed to carry his burden of proving continued disability. Although plaintiff assigns as error the Commission's ruling that he "failed to establish by a preponderance of the credible evidence that he has been disabled" under G.S. §§ 97-29 or 97-30, plaintiff in his brief does not argue that he was erroneously assigned the burden of proof, but rather that the burden was met.

In our discretion under N.C.R. App. P. 2, "[t]o prevent manifest injustice to a party," we suspend N.C.R. App. P. 28(a) which mandates that our review be limited to questions presented by the parties' briefs. Considering there may have been a question as to the law regarding the manner in which a claimant's benefits may be terminated and the applicable burdens of proof, and that the *Kisiah* opinion which definitively speaks to these issues has only recently been handed down, we believe it would indeed constitute "manifest injustice" to fail to accord plaintiff herein the presumption of disability now firmly recognized in *Kisiah*.

Accordingly, the 16 February 1995 Opinion and Award of the Commission is reversed and this case remanded to the Commission for such further hearing or proceedings as may be necessary and appropriate.

Reversed and remanded.

Judges JOHNSON and SMITH concur.