The Commission erred in concluding and finding that the plaintiff is not entitled to workers' compensation benefits after 20 March 1995.
 The defendant executed a Form 60 admission of workers' compensation which was filed with the Industrial Commission on or about 23 February 1995.
In a Form 33R response to the claimant's Form 33 request for hearing the defendant responded that: "We see no necessity for a hearing in view of the fact that Swift has assumed responsibility for the claim. This response was filed with the Industrial Commission on 8 March 1995.
On 23 March 1995, the defendant filed with the Industrial Commission its Form 24 Application to Stop Payment of Compensation pursuant to N.C.G.S. § 97-18.1. In that Form 24 the defendant recited that it had paid temporary total to the claimant for 7 weeks and 1 day from January 30, 1995 through March 20, 1995 and it further acknowledged that the defendant admitted the employee's right to compensation. Its ground for termination of the claimant's benefits was that: "Dr. Juberg released Mr. Blackley to return to work with no limitations". The Form 24 Application did not contain an allegation or even make reference to the fact that the defendant had fired the claimant based upon a contention that he had lied to the claimant on an occasion, which predated his compensable injury, which occurred 30 January 1995. The Form 24 Application did not inform the Industrial Commission that the defendant had refused to provide work for the claimant.
 On its Form 28B filed with the Industrial Commission on March 23 1995, the employer sidestepped its obligation to answer line 14 on that form concerning whether the claimant has returned to work. The defendant merely stated that: "Employee was released to return to work". It did not inform the Industrial Commission that it refused to provide work for the claimant even though he appeared for work and was willing to work.
 The matter appeared before Deputy Commissioner Ford from an appeal pursuant to N.C.G.S. § 97-83 from an Administrative Order filed April 17, 1995, approving the Form 24 Application to Stop Benefits.
 The pleading before Deputy Commissioner Ford at the hearing is the defendant's Form 24 Application to Stop Payment. This Application does not contain an allegation of the false statements to the defendant or any justification for firing him. The sole basis for the Form 24 Application was simply that: "Dr. Juberg released Mr. Blackley to return to work with no limitations". It was impermissible at this point to introduce extraneous issues, which were not raised in the initial pleading. N.C.G.S. § 97-18.1 which is the statutory basis for the defendant's Application to Stop Payment provides in Subsection (d) that upon a request for a formal hearing pursuant to N.C.G.S. § 97-83 a hearing shall be had de novo on the employer's application for termination or suspension of compensation . . . . (Emphasis added)
Since the defendant-employer's Application for Termination or Suspension of Payment did not refer to its contention that the claimant was justifiably fired, this issue was not properly before the Deputy Commissioner or the Full Commission.
Aside from that procedural defect, the defendant may not prevail on the merits of the case based upon the facts presented to the Commission.
 A key factor in this case is that the defendant was not terminated for anything he allegedly did after his injury on 30 January 1995. On the contrary, he was fired for something, which allegedly occurred two years earlier (in 1993) after having worked successfully for the defendant for many months.
An employer may not escape its obligation to its employee under the workers' compensation act by merely firing that employee for misconduct, which occurred prior to the injury.
 Once the employer admits liability under the Form 60 Agreement without any subsequent pleading or argument that the liability did not exist, the Form 60 Application has the same effect as a Form 21 Agreement approved by the Industrial Commission.
Once the employee's disability and the employer's liability for the same is admitted, the employee is cloaked with the presumption of disability which may be rebutted only by proof offered by the employer that the employee is capable of earning wages equal to or greater than those that the employee earned at the time he was injured. King v. Yeargian Construction Company,476 S.E.2d 898 (1996)
 The case of Kisiah v. W. R. Kisiah Plumbing 124 N.C. App. 72, 476 S.E.2d 434 (1996) is very similar to this case insofar as it relates to employee firing. In Kisiah the claimant was fired by the defendant at the time he was scheduled to begin full time duties. The employer in Kisiah discontinued payment of disability compensation to the plaintiff who then filed a Form 33 Request for Hearing. Nowhere in the Kisiah
opinion is there a hint that an employer would be justified in terminating compensation benefits to the employee by the mere expedient of firing him. As applied to this case, it is important to note that prior to being fired the claimant Kisiah had been back at work on a part-time basis for two weeks and was scheduled to begin full-time duties at the time he was fired by the defendant. Kisiah v. W. R. Kisiah Plumbing 124 N.C. App. 72 at 75. In Kisiah the Full Commission had held that after the claimant was terminated by the defendant he failed to make any effort to look for employment suitable to his capacity: "Given his very limited work restriction regarding safety shoes, by failing to look for suitable employment plaintiff had failed to establish that he continued after January 6, 1993, to suffer a loss of wage earning capacity as a result of the injury of April 27, 1992". Kisiah v. W. R. Kisiah Plumbing
124 N.C. App. 74 [124 N.C. App. 72] at 76.
 In reversing, the Court of Appeals held that a Form 21 Agreement represents an admission of liability by the employer for disability compensation and is an admission by the employer of liability, entitling the employee to a continuing presumption of disability. Further that after the presumption attached, the burden shifted to the employer-defendant to show that the plaintiff is employable.
 The defendant in its Form 24 Application relied exclusively on the release to return to work as the only and sole basis for terminating the claimant's benefits. However, as stated by the Court of Appeals in Radica V. Carolina Mills 113 NC App 440, 439 S.E.2d 185 (1984) "An employee's release to return to work is not the equivalent of a finding that the employee is able to earn the same wage earned prior to the injury, nor does it automatically deprive an employee of the Form 21 presumption". Even if employee returns to work at a pre-injury wage level, this evidence alone may be an unreliable basis for estimating earning capacity. Kisiah v. W. R. Kisiah Plumbing 124 N.C. App. 72 at 80.
 As noted above, the defendant-employer had the burden of going forward with the evidence to rebut the presumption of the plaintiff's disability. The only evidence presented was the return to work note from the plaintiff's doctors along with an admission that they refused to provide work for the employee even though he was willing to work.
The Court of Appeals in Kisiah held that the Form 21 Agreement entitles the employee to rely upon the benefit of presumption that he is totally disabled. It is further noted that: "The employee need not present evidence at the hearing unless and until the employer `claiming that the claimant is capable of earning comes forward with evidence to show not only that suitable jobs are available, but also that the claimant is capable of getting one, taking into account both physical and vocational limitations'." Kennedy v. Duke University MedicalCenter 101 N.C. App. 24, 33, 398 S.E.2d 677, 682 (1990). Again,capacity to earn is the benchmark test of disability, so mere proof of a return to work is insufficient to rebut the Form 21 presumption".
 Here the defendant did not come forward with any evidence as to what other jobs were available or that the plaintiff, given his education, training and experience and his physical condition was able to obtain such a job. Indeed, the evidence does show that the defendant itself was unwilling to continue to employ the claimant because he had a bad back. The defendant is therefore liable to the plaintiff for temporary total benefits from March 20, 1995 when it ceased such payments until April 24, 1995 when the employee was able to find a job earning a lesser income. Thereafter, the employee is entitled to recover from the employer under N.C.G.S. § 97-30 compensation for his permanent partial disability at the rate of two-thirds of the difference between his pre-injury wage of $565.81 and the $450 he began earning after April 24, 1995. These weekly benefits should continue for 300 weeks less the weeks he has been paid temporary total benefits.
The recent case of Seagrove v. Austin Company of Greensboro123 N.C. App. 228, 472 S.E.2d 397 is not determinative since that case deals with a post return to work firing. In the instant case, the defendant searched through their records to find some excuse to fire Mr. Blackley after it had incurred an obligation to him under the workers' compensation act. The defendant may not escape its obligation to its employee under the Workers' Compensation Act by the mere expediency of firing him for something that allegedly occurred prior to the injury in question.
The defendant should be ordered to pay temporary total benefits under N.C.G.S. § 97-29 and permanent partial disability benefits under N.C.G.S. § 97-30.
 S/ ____________________ THOMAS J. BOLCH COMMISSIONER